UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

VALERIE STEELE, On Behalf of Her Infant Son, J.S.

                                        Plaintiff,

              -against-

SUCCESS ACADEMY CHARTER SCHOOLS, INC.; SUCCESS ACADEMY CHARTER SCHOOL HELL'S KITCHEN; SUCCESS ACADEMY BOARD OF TRUSTEES SAMUEL A. COLE, BRYAN BINDER, SCOTT FRIEDMAN, GREGORY SAWERS, EDWIN CESPEDES, DERRELL BRADFORD, BRIAN LEVINE, SULEMAN LUNAT, JARETT POSNER, LORENZO SMITH III, and ANDREW D. STONE; CHIEF EXECUTIVE OFFICER EVA MOSKOWITZ; MICHAEL LAFRANCIS; JOHN DOE ##1-4,

                                        Defendants.

------------------------------------------------------------------------ X

**COMPLAINT AND JURY DEMAND**

Docket No.

ECF CASE

## PRELIMINARY STATEMENT

1.     As a charter school network that receives state and public funding, Success Academy Charter Schools ("Success Network" or "the Network") must allow children with special needs to attend its schools. Success Network states on its website that admission is open to all New York State Children, "including those with special needs and English Language Learners", as they must by law.

2.     Once admitted, however, children with disabilities and special needs and their parents get singled out for harassment and discrimination.

3.     After the investigation of complaints made against the Success Network, the State Department of Education ("SDOE") found that Success Academy fails to meet legal

1

requirements designed to serve and protect the interests of children with disabilities. Notably, the SDOE found that Success Academy had simply refused legal orders requiring that a student "stay put" at the school, and removed or refused to allow the return of the student in direct contravention of law. *See* Exhibit A.

4. Moreover, as a pattern and practice the Network retaliates against whistleblower parents by releasing confidential information about their children in violation of the Families Education Rights and Privacy Act ("FERPA"). The United States Department of Education ruled that the Network had a pattern and practice of violating FERPA. *See* Exhibit B.

## JURISDICTION AND VENUE

5. This action is brought pursuant to 28 USC §1331, Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794a) and 42 USC §§1983 and 1988. Supplemental jurisdiction is asserted over claims under state and local laws.

6. Venue is laid within the United States District Court for the Southern District of New York in that a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District of New York.

## PARTIES

7. Valerie Steele is a resident of Manhattan in the City and State of New York. She is the Mother and Legal Guardian of J.S.

8. Plaintiff J.S. was at all times here relevant a student at Success Academy Hell's Kitchen ("SA-HK"). He is a resident of Manhattan in the City and State of New York. J.S. is and at all times here relevant diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD").

9.      Defendant Success Academy Charter Schools, Inc. ("Success Academy") is a non-profit corporation organized under the laws of the State of Delaware. Success Academy's headquarters are located in New York, New York. Success Academy administers 47 schools in the City of New York. It received direct funding from the federal government and the State of New York, and resources from the City of New York.

10.     Defendant Success Academy Hell's Kitchen ("SA-HK") is a charter school located in the Hell's Kitchen neighborhood of Manhattan and is wholly controlled and operated by Success Academy.

11.     Defendant Michael LaFrancis was at all times here relevant an employee of Success Academy and the principal of SA-HK.

12.     Defendant Board of Trustees Samuel A. Cole, Bryan Binder, Scott Friedman, Gregory R. Sawers, Edwin Cespedes, Derrell Bradford, Brian Levine Suleman Lunat, Jarrett Posner, Lorenzo Smith III and Andrew Stone (collectively "the Board of Trustees") were members of the Success Academy Board of Trustees. Under N.Y. Education Law § 2853(f), the Board of Trustees has final policy making authority for Success Academy and its schools within the network.

13.     Defendant Eva Moskowitz is the Chief Executive Officer of Success Academy and has decision making authority for Success Academy.

14.     All defendants acted under color of state laws and within the scope of their employment.

**FACTUAL ALLEGATIONS**

15. Success Academy schools are public charter schools. As such, like public schools they are required to admit students regardless of their disability.

16. Unfortunately, Success Academy has a track record of targeting students for removal from their schools based on disabilities and other measures.

17. In third grade, while attending Success Academy, Hell's Kitchen, J.S. was diagnosed with Attention Deficit/Hyperactivity Disorder. He received psychiatric treatment to help him with the condition. J.S.'s ADHD substantially limits one or more of major life activities, in his case, his ability to learn and concentrate.

18. SA-HK and Principal Michael LaFrancis was aware of his disability but would not accommodate his disability consistent with federal law. To the contrary, SA-HK instead engaged in a sustained campaign to harass J.S. and his parents with the purpose of driving J.S. out of the school because of his disability.

19. SA-HK and LaFrancis would repeatedly give J.S. "consequences" when he fidgeted, a clear and obvious symptom of ADHD. The "consequences" only served to exacerbate his condition and were given with the intention of discriminating against J.S. and driving him out of the School. On several occasions, the consequences given to J.S. was to prevent him from attending recess, which causes extreme suffering to a child with ADHD and only serves to exacerbate his symptoms, cuasing him greater learning difficulty.

20. He was suspended from the school on numerous occasions for minor conduct related to his disability, causing J.S. to miss out on learning and his parents to miss work. Some suspensions were for four days, causing great stress on the family and of course

4

causing J.S. to miss out on educational opportunity. The intention of these suspensions was to discriminate against J.S. and drive him out of the school.

21. On one occasion when J.S. was being given "consequences" at the school – specifically preventing him from attending a classroom party -- Valerie Steele was called and told that he was "hiding behind a door" and "they could not get him out." They added, causing enormous alarm, that he was "stapling himself." They told her they needed to come pick him up.

22. Ms. Steele raced to the school. When she arrived, she observed her son sitting in a corner surrounded by two NYPD precinct officers, two school security officers, the defendant principal of the school and a teacher. He was not "stapling himself". Rather, he had a single staple that he was picking a nail with.

23. The police officer asked if he needed to take J.S. with him to the precinct. Ms. Steele said no and while leaving with her son Principal LaFrancis tried to stop her and demanded that she sign some kind of release form.

24. Approximately one month later, SA-HK called Ms. Steele claiming that her son was "banging his head against the wall". She told the person from SA-HK that her husband would go to get him and would be there shortly. SA-HK nevertheless called 911 and an ambulance arrived at the school for J.S.

25. When the husband arrived the ambulance had already left for the hospital with J.S. There were no visible injuries on J.S. and had no need for any treatment. The EMTs on the scene did not treat J.S. and his father brought him home. The ambulance company did invoice the Steeles for $800, however due to the school's punitive and discriminatory purpose in calling an ambulance.

26.     Approximately another month later, Principal LaFrancis of SA-HK called Ms. Steele saying that he was "crawling on the floor" and that he "picked up a desk." He further noted that he was going to call an ambulance to come get J.S. She asked that he not call an ambulance and that she would come right away to the school.

27.     J.S. was nevertheless picked up by an ambulance, at some point handcuffed, and transported to Mt. Sinai Hospital's psychiatric unit. Ms. Steele arrived at the hospital and she tried to take J.S. home since he was not injured and had no need for treatment. Instead she was stopped by hospital security and J.S. and his mother were placed in a locked room for two hours until J.S. was seen by a psychiatrist.

28.     When the psychiatrist learned he was transported from Success Academy, she stated "we get quite a few of these from Success Academy." The psychiatrist asked a few generic questions like "how was school", did not ask anything about the incident, and released J.S. immediately. It was clear J.S. had no need to be detained in a hospital.

29.     On another school day, J.S. was playing in the playground and by accident hit his head against the monkey bars, causing a bloody gash to open on his head. In this instance, the school did not call an ambulance or any outside agency, preferring to keep it quiet. When Ms. Steele arrived at the school J.S. was sitting in a chair bleeding heavily. Ms. Steele to J.S. to get medical attention and he received staples to his head to close the gash.

30.     Ultimately, Principal LaFrancis, SA-HK and the Success Academy Network' campaign of harassment and discrimination achieved its goal. Ms. Steele removed J.S. from the school to another non-charter public school, where he ultimately received the educational and behavioral attention he needed.

## **DAMAGES**

31. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

   a. Severe Emotional Distress;

   b. Loss of educational opportunity;

   c. Medical expenses;

   d. Attorneys' fees and costs.

### **FIRST CAUSE OF ACTION – DISCRIMINATION AGAINST J.S.**
(42 USC § 1983 – Violation of § 504 by Discriminating Against J.S. as to Success Network, SA-HK and Michael LaFrancis)

32. The above paragraphs are here incorporated by reference.

33. J.S. is diagnosed with ADHD, disabilities that substantially limits one or more major life activities. He is therefore an "individual with a disability" under §504 of the Rehabilitation Act of 1973.

34. J.S. is "otherwise qualified" to attend a school within the Success Network, including SA-HK, within the meaning of §504 of the Rehabilitation Act of 1973.

35. He has been "excluded from benefits" solely due to his disability within the meaning of §504 of the Rehabilitation Act of 1973.

36. Success Network and SA-HK each receive federal funding, making them subject to §504 of the Rehabilitation Act of 1973.

37. Defendants Success Network, SA-HK and Michael LaFrancis failed to make reasonable accommodations for J.S. and discriminated against him as described in the factual allegations above.

38. The defendants' willful and intentional discriminatory acts taken against J.S. and

his mother violates §504 of the Rehabilitation Act of 1973.

39. Plaintiff was injured as a result of defendants' wrongful acts.

**SECOND CAUSE OF ACTION—MUNICIPAL AND SUPERVISORY LIABILITY**
(42 U.S.C. § 1983- Municipal and Supervisory Liability as to Success Network, the Board of Trustees, and Eva Moskowitz)

40. The above paragraphs are here incorporated by reference.

41. Pursuant to N.Y. Education Law § 2853(f), the Board of Trustees of a Charter School has final policy making authority for the charter schools under its jurisdiction.

42. Under the above referenced law, the Board of Trustees of a Charter School can also delegate certain decision making authority to employees. Upon information and belief, the Success Academy Board of Trustees delegates certain decision making authority to CEO Eva Moskowitz.

43. The allegations of illegal treatment of students with disabilities is well known to all the Board of Trustees, CEO Eva Moskowitz, and Success Academy. In 2015, New York City Schools Chancellor Carmen Farina explained that comparing a non-charter public school to a Success Academy school in test scores was comparing apples to oranges because we keep all our kids from the day they walk into the building."[1]

44. The 2014-2015 Success Academy Family Handbook, which is introduced by CEO Eva Moskowitz, explains its "zero tolerance approach" when it comes to discipline. In a Complaint filed with the United States Department of Education Office of Civil Rights, 14 complainants with disabilities who were Success Academy students, joined by the Public Advocate of the City of New York and the Chair of the Committee on

---

[1] https://www.nytimes.com/2015/04/07/nyregion/at-success-academy-charter-schools-polarizing-methods-and-superior-results.html

Education of the Council of the City of New York, alleged that the inflexible zero tolerance approach amounts to discrimination against children with disabilities. The rigid rules and the practice of "counseling out" students with disabilities from the Success Academy network amounted to discrimination.[2] The Office of Civil Rights vowed to investigate.[3]

45. Defendants further are aware and established a policy of ignoring lawful orders of impartial hearing officers to reinstate students with disabilities who had been suspended from school. During the 2017-2018 school year, in house lawyers for Success Academy directed parents that their children who were ordered back to school were still suspended and were prohibited from school. This was clearly Success Academy policy.

46. The allegations made in the preceding paragraphs, among others involving the mistreatment of students with disabilities, were the subject of a complaint filed with the State Education Department. All the allegations were substantiated.

47. The named defendants knew and in fact established a policy and practice that students with disabilities were discriminated against by not making reasonable accommodations for them, that they were suspended repeatedly in violation of law, were pushed out of the school through harassment. Nevertheless, they failed and continue to fail to take corrective actions to stop the discrimination in their schools.

48. Furthermore, when the parents of children with disabilities blow the whistle on the treatment of their children at Success Academy Schools, The Network and its

---

[2] The Complaint can be found here: https://images.law.com/contrib/content/uploads/documents/389/39711/a_and_parent_of_a_et_al._1-20-16.pdf

[3] https://www.nydailynews.com/new-york/education/nyc-charter-school-probed-alleged-bias-disabled-kids-article-1.2634057

employees retaliate by releasing private, protected information of the children in violation of FERPA.

49. FERPA requires educational institutions such as the Success Network to protect the privacy of students. It prohibits them from having a pattern or practice of releasing such information.

50. Yet, the Success Network flouts FERPA by having adopted a pattern and/or practice of disclosing such information. After a parent spoke to a reporter from the PBS NewsHour about her child's negative experience at Success Academy, the Network released private and protected information not only to the reporter on the story, they published the information about the child on their own web site. Incredibly, defendant Moskowitz again disclosed information about the child -- procured in her position as an official of the Success Network -- in her memoir published by HarperCollins.

51. In defending the complaint made to the U.S. Department of Education about the release of the child's information, the Success Network argued that since a parent had made "false accusations" against the Success Network and "defamed" it on the PBS News Hour, they in turn were entitled to release private information about the former student otherwise protected by FERPA.

52. This ridiculous and toxic legal argument was rejected by the Department of Education, and they were adjudged to have violated FERPA.

53. Such retaliatory disclosures serve to cover-up the wrong-doings of the Success Network against children with disabilities and enable its teachers, administrators and employees to engage in such unlawful conduct.

54. The above described policies and customs and failures to train, supervise, or

discipline demonstrated willful deliberate indifference on the part of these policymaking defendants and were the cause of the violations of Plaintiff's damages and are liable to plaintiff under §1983.

55. Plaintiff was injured as a result of defendants' willful, intentional deliberate indifference.

WHEREFORE, Plaintiff demands judgment against the Defendants in favor of Plaintiff in an amount to be determined for each of Plaintiff's causes of action and granting such other and further relief as this Court deems just and proper

DATED:   June 12, 2019
         New York, New York

Respectfully yours,

S/ *Leo Glickman*

TO:   Defendants

By: Leo Glickman
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
5030 Broadway, Ste. 652
New York, NY 10034
(718) 852-3710
(718) 852-3586
lglickman@stollglickman.com

CC: Frank E. Miller Jr.
Student Privacy Policy Office
U.S. Department of Education
400 Maryland Avenue, SW
Washington, D.C. 20202 – 8520