

UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF PLANNING, EVALUATION AND POLICY DEVELOPMENT

May 31, 2019

Ms. Eva Moskowitz
Chief Executive Officer
Success Academy Charter Schools
95 Pine Street, Floor 6
New York, New York  10005

                                                          Complaint No. 1892
                                                          Family Educational Rights
                                                             and Privacy Act

Dear Ms. Moskowitz:

This is to inform you of the findings in the complaint filed against Success Academy Charter Schools (Success Academy) by Ms. Fatima Geidi (Parent).  We apologize for the delay in issuing this letter of finding.  The Parent alleged that Success Academy violated the Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 2132g; 34 CFR Part 99) when it disclosed personally identifiable information from the education records of her son,  [name removed](Student), to third parties absent the Parent's prior written consent.  The Parent's specific concerns are summarized in the following two allegations.

<u>Allegation #1</u>

The Parent alleged that on October 19, October 21, and October 25, 2015, (this last date was not cited in our original letter initiating this investigation), Success Academy sent e-mails to Ms. Judy Woodruff of the PBS NewsHour and posted this same information on its Success Academy website.

By letter dated December 7, 2017, the Family Policy Compliance Office, now known as the Student Privacy Policy Office (Office), informed Success Academy of the Parent's first allegation and requested it to provide us a written response.  By letter dated January 31, 2018, Ms. Vanessa M. Biondo, senior managing director of Legal for Success Academy, responded on behalf of Success Academy.  Specifically, she states:

> The Parent's complaint is without merit and should not give rise to any sanctions under FERPA.  First, [the Parent] and [the Student] willingly appeared on the nationally televised news show PBS NewsHour to defame Success Academy by falsely asserting that Success Academy had suspended the Student for minor misconduct.  As set forth below, because the Parent voluntarily put herself and her son on television to make false

400 MARYLAND AVE., S.W. WASHINGTON, D.C. 20202-2110

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

accusations against Success Academy, the First Amendment gives Success Academy the right to respond to and correct their false statements about the Student's disciplinary records.  Indeed, Success Academy's right to provide truthful information is especially powerful where, as here, it is central to a critical public policy debate.  The Parent's and Student's false statements were made and used as part of an important public debate over charter schools and education reform.  To muzzle Success Academy's ability to respond to and correct those statements would run afoul of the First Amendment, which "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people."  New York Times Co. v. Sullivan, 376 U.S. 254, 269 (1964).

Second, even if the First Amendment did not protect Success Academy (and it does), FERPA only sanctions educational institutions when they have a "policy or practice" of disclosing students' education records, see 20 U.S.C. § 1232g(b)(l), and courts have held that even several alleged disclosures relating to a single student does not establish such a "policy or practice." The complaint here falls far short of showing a practice that violates FERPA, as it alleges disclosures of education records in just two related instances concerning the same student.  As discussed further below, Success Academy takes its FERPA obligations seriously, regularly informing its parents and students of their FERPA rights, and consistently maintaining confidentiality over educational records.  The complaint arises out of an extremely unique and unfortunate situation where Success Academy was forced to defend itself by (reluctantly) discussing the Student's past behavior -- and even then, only used pseudonyms and disclosed the minimum necessary to correct the public record.  Even the story's reporter admitted that he made a mistake in airing the Parent's and Student's misstatements and apologized to Success Academy for putting it in this position and not allowing Success Academy to rebut the accusations.  This set of circumstances is rarely, if ever, going to occur again.

Relevant Regulations

FERPA is a federal law that protects the privacy of students' education records.  The term "education records" means those records that are: (1) directly related to a student; and (2) maintained by an educational agency or institution or by a party acting for the agency or institution.  *See* § 99.3 "Education records."  FERPA affords parents and eligible students the right to have access to their education records, the right to seek to have the records amended, and the right to have some control over the disclosure of information from the records.  (An "eligible student" is a student who has turned 18 or is attending college at any age.)  Under FERPA, an educational agency or institution is prohibited from disclosing personally identifiable information from students' education records, without consent, unless the disclosure meets an exception to FERPA's general consent requirement.  *See* 34 CFR § 99.30 and § 99.31.

Personally identifiable information includes:

> (f) Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not

>  have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; . . .

In addition to the regulations discussed above, the Office will also be referencing our July 2, 2015, letter to the Honorable Mark R. Herring, Attorney General of the Commonwealth of Virginia, available on our website at https://studentprivacy.ed.gov/resources/letter-virginia-attorney-general-mark-herring-regarding-public-release-executive-summary.  That letter was in response to the University's request that the Department approve the public release of an Executive Summary that addresses the University's actions related to the Student's allegations of sexual assault in an article published in renowned global magazine publication.  In that request, the University included an opinion from an outside law firm that indicated "that disclosure of the Executive Summary … will not reveal any information protected by FERPA, and, even if it did, the protection afforded to that information has been impliedly waived" by the Student due to the "extensive self-disclosure by the student[.]"  We believe there are several inherent parallels between the University of Virginia letter and our position relevant to this investigation.

Analysis & Findings

In the letter to the Commonwealth of Virginia (and as noted below) the Department's guidelines for permitting an educational agency or institution to infer an implied waiver of the right to consent to disclosure of personally identifiable information from a student's education records in a non-litigation context, we stated:

> The Department will support an educational agency or institution that has inferred an implied waiver of the parent's or student's right to consent to disclosure when:
>
>> 1. the parent or student has taken an adversarial position against the educational agency or institution;
>>
>> 2. the parent or student has initiated the involvement of the third party by contacting that party in writing, and, in so doing:
>>
>>> a) set forth specific allegations against the educational agency or institution; and,
>>>
>>> b) requested that action be taken against the educational agency or institution or that the third party assist the parent or student in circumventing decisions made about the student by the educational agency or institution;
>>
>> 3. the third party's special relationship with the educational agency or institution:
>>
>>> a) gives the third party authority to take specific action against the educational agency or institution; or,
>>>
>>> b) reasonably could be significantly adversely affected if the educational agency or institution cannot refute the allegations; and

> 4. the disclosure is as limited as is necessary for the educational agency or institution adequately to defend itself from the parent's or student's charges or complaint.  The third party should follow the procedures set forth in 34 CFR § 99.33 on limitations that apply to the redisclosure of information derived from education records.

The Department reasoned that, in this context, the policy considerations supporting an implied waiver of the right to consent sufficiently outweighed the potential harm from the dissemination of personally identifiable information from education records without the appropriate written consent.  In our July 2, 2015, letter to the Commonwealth of Virginia, we reiterated what we emphasized in our letter of 1998 finding to Towson University, that the Department did not apply the doctrine of the implied waiver of the right to consent to the disclosure of personally identifiable information from a student's education records to the media for two reasons.  "First, the Department was concerned that there could 'be no effective limitation on the widespread dissemination of the information from [the student's] education records' and that 'the harm to the student's privacy interest under FERPA' would be 'simply too great where the disclosure of personally identifiable information in education records is to the general public.'  Second, the Department reasoned that the media and the general public could not take specific actions against an educational agency or institution.  The Department has not issued any letters that extend the doctrine of implied consent beyond the criteria set forth in footnote 10, above."  (Footnote 10 set forth the criteria that were set forth in the letter to Towson University.)  *See* Letter to Mark R. Herring, Attorney General, Commonwealth of Virginia, July 2, 2015: https://studentprivacy.ed.gov/sites/default/files/resource_document/file/2015%20Letter%20to%20VA%20Attorney%20General%20Mark%20Herring%20%281%29.PDF.

In addition, in the preamble to the 2008 FERPA final rule, public commenters expressed concern that FERPA should not prevent a school from releasing records from which all direct and indirect identifiers have been removed "without regard to any outside information, particularly after a student or parent has waived all pretense of confidentiality by contacting the media" and that we had not adequately acknowledged "the public interest in school accountability."  73 Fed. Reg. 74830 (Dec 9, 2008).  The Department responded to these concerns by acknowledging that we had found "in limited circumstances a parent or student may implicitly waive their privacy rights under FERPA by disclosing information to parties in a special relationship with the education agency or institution such as a licensing or accreditation organization."  However, we indicated that we did "not believe that parents and students generally waive their privacy rights under FERPA by sharing information with the media or other members of the general public" and "[t]he fact that information is a matter of general public interest does not give an educational agency or institution permission to release the same or related information from education records without consent."  *Id at* 74831.

This Office finds that, while Success Academy may not have used the Parent or Student's actual name when it shared information via email with representatives of the PBS Newshour and when it posted information on its website, the information disclosed nonetheless would be considered "personally identifiable information" based on the definition stated above.  Further, Success Academy disclosed that information without the prior written consent of the Parent and inconsistent with the implied consent criteria set forth by the Department for disclosures absent

Page 5 – Ms. Eva Moskowitz

the Parent's written consent. Therefore, regarding Allegation #1, we find that Success Academy did violate FERPA as alleged.

While FERPA would not permit the disclosure of PII from the student's education records, without parental consent, to counter alleged misinformation in the media, it would be permissible for the school to make a public statement disputing the accuracy of the information that does not contain any PII from the student's records. As a general matter, a school can share the records in question with the parent to inform them of the student records it possesses to dispute the claim and to offer the parent the opportunity to review those records.

If following the review, the parent does not provide consent to release the records, a school can publicly state that it disputes the accuracy of the information presented to the press and that it provided the parent the opportunity to review the education records that serve as evidence. In addition, it could state it is unable to present evidence to the press as the records in question are protected under the Family Educational Rights and Privacy Act.

<u>Allegation #2</u>

The Parent alleges that Success Academy violated FERPA when Ms. Moskowitz included discipline information from the Student's education records in her book, entitled "The Education of Eva Moskowitz," published by Harper Collins. Specifically, the Parent States:

> Though in the book [Ms. Moskowitz] refers to me as "Jane Doe" and my son as John, given the context and her account of the PBS show in which we appeared, anyone would be easily able to identify our names by doing an internet search for this PBS show.

By e-mail dated January 18, 2019, this Office informed Success Academy of the Parent's second allegation and provided it pages 308 and 309 of that book, as included by the Parent in her complaint. Ms. Bonnie Litt, general counsel for Success Academy, responded by letter dated February 4, 2019. In her response, Ms. Litt states:

> The second allegation arises from the same PBS NewsHour story where the Parent appeared on national television to provide false information concerning the disciplinary history of [the Student] while at Success Academy. . . .

> Finally, the second allegation fares even worse that the first allegation because the second allegation is based upon statements made by Ms. Moskowitz in her personal memoir repeating the same information already disclosed by Success Academy to correct the Parent's and the Student's misstatements, referring to them as "Jane Doe" and "John Doe." The book was not published by Success Academy nor was Ms. Moskowitz speaking for Success Academy in her memoir; rather she wrote her own life story in her personal capacity. On its face, FERPA only applies to any "educational agencies or institution that receives federal funds and has a policy or practice of disclosing education records, not individuals speaking for themselves and repeating information already publicly available.

Page 6 – Ms. Eva Moskowitz

Relevant Regulations

As stated above, an education record is any record directly related to a student and maintained by an educational agency or institution or by a party acting for the agency or institution. A school, or a party acting for the school, may not generally disclose personally identifiable information from a student's education records to a third party unless the student's parent has provided written consent or the disclosure meets one of FERPA's exceptions to the general written consent requirement. One such exception permits "school officials," including teachers, within a school to obtain access to education records provided the school has determined that they have a "legitimate educational interest" in the information. Although the term "school official" is not defined in the statute or regulations, this Office has interpreted the term broadly to include a teacher, administrator, librarian, board member, support or clerical staff, attorney, nurse and health staff, counselor, human resources staff, information systems specialist, and attorney.

A school that allows school officials to obtain access to education records under this exception must include in its annual notification of FERPA rights a specification of its criteria for determining who constitutes a "school official" and what constitutes "legitimate educational interests." Generally, a school official has a legitimate educational interest if he or she needs access to information in an education record to carry out his or her official responsibilities.

Analysis & Findings

Even though the Parent's and Student's names were not used, in reviewing the information contained on pages 308 and 309 of your memoir, it appears that the information is reflective of the disciplinary actions pertaining to the Student. Further, it appears that you likely obtained this information in your role as a school official with a legitimate educational interest. However, as indicated above, school officials are not permitted to further disclose personally identifiable information from a student's education records obtained in their official capacity as a school official with legitimate educational interest to third parties, including publication of an article or book that reveals the information, absent the parent's written consent unless one of FERPA's exceptions to the written consent requirement is met.

As stated in response to Allegation #1, it appears that Success Academy, albeit through you as a school official in your personal memoir, disclosed information meeting the definition of "personally identifiable information" to the publishing company that ultimately printed and distributed your memoir. Therefore, since this disclosure occurred without the Parent's prior written consent and inconsistent with the implied consent criteria set forth by the Department for disclosures absent the Parent's written consent, this Office finds that Success Academy also violated FERPA in regards to the Parent's second allegation. The Parent will be informed of our findings by copy of this letter.

In order to close this investigation, we need to receive written assurance within 30 days of your receipt of this letter that all appropriate school officials have or will receive training on the requirements of FERPA as they relate to the issues in this complaint. This training may be provided via workshops, webinars, memorandum, on-line trainings, such as those offered on our website at www.studentprivacy.ed.gov, etc. Please inform this Office of the plan Success

Page 7 – Ms. Eva Moskowitz

Academy will utilize in delivering that training by emailing the response to my attention at [FERPA.ComplaintResponse@ed.gov](mailto:FERPA.ComplaintResponse@ed.gov) including the complaint number in the subject line.  In lieu of sending the response electronically, the written response may be sent to the following address:

>Student Privacy Policy Office
>U.S. Department of Education
>400 Maryland Avenue, SW
>Washington, D.C. 20202 – 8520

Thank you for your continued cooperation regarding this complaint.

>Sincerely,
>
>Frank E. Miller Jr.
>Deputy Director
>Student Privacy Policy Office

cc:  Parent

Ms. Bonnie Litt