UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/1/20
```

<table>
<tr><td>

Valerie Steele,

                Plaintiff,

   –v–

Success Academy Charter Schools, Inc., *et al.*,

                Defendants.

</td><td>

19-cv-5659 (AJN)

OPINION & ORDER

</td></tr>
</table>

ALISON J. NATHAN, District Judge:

Plaintiff's minor child, J.S., attended elementary school at Success Academy Hell's Kitchen in Manhattan.  Plaintiff claims that J.S. was discriminated against on the basis of her disability at the School.  She therefore alleges that the School, the School's parent entity, and various School officials (the Individual Defendants) violated Section 504 of the Rehabilitation Act and 42 U.S.C. § 1983.  The Individual Defendants have moved to dismiss.  Because the Rehabilitation Act does not create individual liability, and § 1983 does not provide a workaround, this partial motion to dismiss is GRANTED.

## I.     BACKGROUND

### A.  Plaintiff's Allegations

Plaintiff Valerie Steele is the mother and legal guardian of J.S.  Complaint, Dkt. No. 53, ¶¶ 7–8.  J.S. has been diagnosed with ADHD.  Compl. ¶ 8.  Defendant Success Academy is a "non-profit corporation" that "administers 47 schools in the City of New York," one of which is Success Academy Hell's Kitchen (the School), a charter school in Manhattan.  Compl. ¶¶ 9–10.

J.S. was diagnosed with ADHD while attending third grade at Success Academy Hell's Kitchen, and the School was made aware of his disability.  Compl. ¶¶ 17–19.

Plaintiff alleges that the School failed to "accommodate his disability consistent with federal law" and instead "engaged in a sustained campaign to harass J.S. and his parents with the purpose of driving J.S. out of the school because of his disability."  Compl. ¶ 18.  Specifically, the School and its principal, Michael LaFrancis, would "give J.S. 'consequences' when he fidgeted," such as "prevent[ing] him from attending recess, which causes extreme suffering to a child with ADHD and only serves to exacerbate his symptoms, causing him greater learning difficulty."  Compl. ¶ 19.  J.S. was also "suspended from the school on numerous occasions for minor conduct related to his disability, causing [him] to miss out on learning and his parents to miss work."  Compl. ¶ 20.  And like the "consequences," the "intention of these suspensions was to discriminate against J.S. and drive him out of the school."  *Id.*

Additionally, Plaintiff alleges that the School overreacted to various situations, again in an attempt to cause J.S. to withdraw.  For example, the School called Plaintiff one day and told her that J.S. was hiding behind a door, could not be reached, was "stapling himself," and needed to be picked up.  Compl. ¶ 21.  When Plaintiff arrived, however, J.S. was surrounding by adults, including security officers, and was not harming himself.  *See* Compl. ¶ 22.  And the School twice called an ambulance for J.S., leading to him being transported to the hospital and being seen by a hospital psychiatrist, even though he had no injuries.  Compl. ¶¶ 24–28.  Yet in an incident in which J.S. did need medical attention, after he had injured himself on the playground and "caus[e]d a bloody gash to open on his head," the School did not call an ambulance or otherwise provide outside the medical attention he needed.  Compl. ¶ 29.

Ultimately, Success Academy's "campaign of harassment and discrimination achieved its goal." Compl. ¶ 30. Plaintiff removed J.S. from the School and placed him in a "non-charter public school, where he ultimately received the educational and behavioral attention he needed." *Id.*

### B. This Case

Plaintiff filed this case in June 2019. Dkt. No. 1. In the operative complaint, Dkt. No. 53, Plaintiff names several defendants: Success Academy Charter Schools, Inc., Success Academy Hell's Kitchen, the School's principal (Michael LaFrancis), ten members of Success Academy's Board of Trustees (the Trustees), and Success Academy's CEO (Eva Moskowitz). Compl. ¶¶ 9–14. She brings two claims. First, she alleges that Success Academy, the School, and LaFrancis violated the Rehabilitation Act (and alternatively, 42 U.S.C. § 1983). Compl. ¶¶ 32–39. Second, she alleges that Success Academy, the Trustees, and Moskowitz bear supervisory and municipal liability under 42 U.S.C. § 1983. Compl. ¶¶ 40–55.

In October 2019, the Court held an initial pretrial conference and entered a case management plan. *See* Dkt. No. 43. Shortly thereafter, Defendants filed a partial motion to dismiss. Defendants contend that the Individual Defendants (the principal, the CEO, and the Trustees) should be dismissed from this action. This motion is now before the Court.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, "the complaint's factual allegations

must be enough to raise a right to relief above the speculative level, i.e., enough to make the

claim plausible." *Arista Records, LLC, v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting

*Twombly*, 550 U.S. at 555) (internal citations and alterations omitted).  "Threadbare recital of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*,

556 U.S. at 678.  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the

allegations in the complaint as true and draws all reasonable inferences in favor of the non-

moving party.  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

Generally, "the facts alleged in the complaint, documents attached to the complaint as exhibits,

and documents incorporated by reference in the complaint" may be considered in assessing

whether a claim is sufficient to survive a Rule 12(b)(6) motion.  *DiFolco v. MSNBC Cable*

*L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### III.    DEFENDANTS' MOTION IS GRANTED

Plaintiff brings a claim under the Rehabilitation Act and a standalone claim under 42

U.S.C. § 1983.  *See* Compl. ¶¶ 32–39, 40–55.  As to the first claim, Plaintiff alleges that

"LaFrancis failed to make reasonable accommodations for J.S. and discriminated against him"

and that LaFrancis' "willful and intentional discriminatory acts taken against J.S. and his mother

violates § 504 of the Rehabilitation Act of 1973."  Compl. ¶¶ 37–38.  As to the second, Plaintiff

alleges that Moskowitz and the Trustees adopted a policy and practice of discriminating against

disabled students by adopting a "zero tolerance approach" to discipline, ignoring orders to

reinstate disabled students, not making reasonable accommodations for them, and harassing

them, among other things.  Compl. ¶¶ 44–47, 50, 54.  Plaintiff premises her § 1983 claim solely

on violations of the Rehabilitation Act.  *See* Compl. ¶ 54.  Specifically she claims that these

"policies and customs and failures to train, supervise, or discipline demonstrated willful

deliberate indifference on the part of these policymaking defendants and were the cause of the

violations of Plaintiff's rights under § 504 of the Rehabilitation Act and are liable for damages to plaintiff under the Rehabilitation Act and § 1983." *Id.* The Individual Defendants—LaFrancis, Moskowitz, and the Trustees—contend that because the Rehabilitation Act does not create individual liability, Plaintiff has failed to state either claim as to them.[1]

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). This provision "aim[s] to root out disability-based discrimination, enabling each covered person (sometimes by means of reasonable accommodations) to participate equally to all others in public facilities and federally funded programs." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 756 (2017).

Individuals cannot be liable under § 504. The Second Circuit has long held that "§ 504 of the Rehabilitation Act [does not] provide[] for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Johnson v. Goord*, No. 01-cv-9587 (PKC), 2004 WL 2199500, at *19 (S.D.N.Y. Sept. 29, 2004) ("there can be no individual liability under Title II of the ADA or section 504 of the Rehabilitation Act"); *see also MC v. Arlington Cent. Sch. Dist.*, No. 11-CV-1835 (CS), 2012 WL 3020087, at *9 n.18 (S.D.N.Y. July 24, 2012) (dismissing a § 504 claim against individual defendants, noting that § 504 does not create individual liability, and admonishing that "Plaintiffs' experienced counsel ought to have been aware of this black-letter law").

---

[1] In her briefing, Plaintiff suggests that Defendants seek to dismiss only LaFrancis on this basis. *See* Pl. Br., Dkt. No. 60, at 1. However, Defendants clearly seek dismissal of every Individual Defendant for this reason. *See* Def. Br., Dkt. No. 58, at 5; Def. Reply Br., Dkt. No. 2, at 2 n.2 (Defendants noting Plaintiff's "puzzling" construction of their argument and making clear that "the prohibition against using Section 1983 to impose individual liability here applies to all Individual Defendants.").

This limitation on the Rehabilitation Act poses a significant obstacle to Plaintiff, as both of her claims are brought against individuals. Yet Plaintiff tries to evade this black-letter law by tacking on citations to 42 U.S.C. § 1983 in her complaint. Section 1983 "authorizes suits to enforce individual rights under federal statutes as well as the Constitution." *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 119 (2005). But not every federal statutory right can be vindicated through § 1983. *Id.* at 120. Instead, "there is only a rebuttable presumption that the right is enforceable under § 1983." *Blessing v. Freestone*, 520 U.S. 329, 341 (1997). "The defendant may defeat this presumption by demonstrating that Congress did not intend that remedy for a newly created right." *Abrams*, 544 U.S. at 120; *Smith v. Robinson*, 468 U.S. 992, 1012 (1984). The Supreme Court has "explained that evidence of such congressional intent may be found directly in the statute creating the right, or inferred from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Abrams*, 544 U.S. at 120 (quoting *Blessing*, 520 U.S. at 341); *see also Middlesex County Sewerage Authority v. National Sea Clammers Assn.*, 453 U.S. 1, 19–20 (1981). "The crucial consideration is what Congress intended." *Smith*, 468 U.S. at 1012.

The Second Circuit has not yet decided whether § 1983 can be used as a backstop to create individual liability under the Rehabilitation Act. But every court of appeals to consider this issue, as well as a majority of district courts in this Circuit, have rejected this approach and concluded § 1983 is not available to provide a remedy for alleged violations of rights under Section 504 of the Rehabilitation Act. *See Ramirez–Senda v. Puerto Rico*, 528 F.3d 9, 13 n.3 (1st Cir. 2008); *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 805–06 (3d Cir. 2007) (en banc); *Lollar v. Baker*, 196 F.3d 603 (5th Cir. 1999); *Tri-Corp Hous. Inc. v. Bauman*, 826 F.3d 446, 449 (7th Cir. 2016) *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (en banc);

*Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("hold[ing] that a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act"); *Holbrook v. City of Alpharetta*, 112 F.3d 1522 (11th Cir. 1997); *see also Freeman v. Rochester Psychiatric Ctr.*, No. 16-cv-06668 (MAT), 2018 WL 4519879, at *5 (W.D.N.Y. Sept. 21, 2018) (collecting cases).

The Court finds this approach persuasive. The Rehabilitation Act adopts the scheme of "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964," 42 U.S.C. § 2000d *et seq.*, to remedy alleged violations of Section 504 by recipients of federal funding. 29 U.S.C. § 794a(a)(2). These remedies include compensatory damages, injunctive relief, and other forms of relief traditionally available in suits for breach of contract. *See Barnes v. Gorman*, 536 U.S. 181 (2002). Suits may be brought under Section 504 against recipients of federal financial assistance, but not against individuals. *Garcia*, 280 F.3d at 107. Punitive damages are unavailable. *See Barnes*, 536 U.S. at 187. The statute's plain text and history do not evince any suggestion that Section 504's remedial scheme was intended "to complement, rather than supplant, § 1983." *Abrams*, 544 U.S. at 122.

Indeed, as the Fifth Circuit explained, "both the Rehabilitation Act and the ADA provide extensive, comprehensive remedial frameworks that address every aspect of [a plaintiff's claim] under section 1983." *Lollar*, 196 F.3d at 610. To allow a plaintiff to sue under both "[Section 504, which sets] forth [a] detailed administrative avenue of redress[,] as well as section 1983 would be duplicative at best; in effect such a holding would provide the plaintiff with two bites at precisely the same apple." *Id.* Then-Judge Sotomayor agreed that Congress did not intend for "plaintiffs [to] seek redress for violation of their . . . Rehabilitation Act rights through the vehicle

of § 1983." *Bartlett v. N.Y. State Bd. of Law Examiners*, 970 F.Supp. 1094, 1144–45 (S.D.N.Y. 1997) (procedural history omitted).  Because the Act creates a comprehensive remedial scheme that permits disabled individuals (and their representatives) to vindicate their rights, the Court agrees that a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a state official in her individual capacity for violations of the Act.

The lack of individual liability under the Americans with Disabilities Act further supports the Court's conclusion.  ADA cases are instructive because the ADA "incorporates the remedial scheme of the Rehabilitation Act of 1973." *Garcia*, 280 F.3d at 111; *see also Rodriguez v. City of N.Y.*, 197 F.3d 611, 618 (2d Cir. 1999) (considering these two statutes "in tandem" because they "impose identical requirements").  And courts have "uniformly held that the ADA's comprehensive remedial scheme Section 1983 claims predicated on ADA violations." *George v. New York City Transit Auth.*, No. 13-cv-7986 (DC), 2014 WL 3388660, at *3 (S.D.N.Y. July 11, 2014) (collecting cases); *see also Jiggetts v. United Parcel Serv.*, No. 14-cv-8291 (AJN), 2017 WL 1164698, at *5 (S.D.N.Y. Mar. 27, 2017).

A minority of district courts in this circuit have come to the opposite conclusion, and allowed plaintiffs to pursue claims of individual liability under the Rehabilitation Act through § 1983.  *See, e.g.*, *Lawton v. Success Acad. Charter Sch., Inc.*, 323 F. Supp. 3d 353, 367 (E.D.N.Y. 2018).  But Plaintiff provides little reason to adopt this approach.  And the handful of cases adopting this position rely on a misguided interpretation of *Weixel v. Board of Education of the City of New York*, 287 F.3d 138 (2d Cir. 2002).  There, *pro se* plaintiffs alleged that a school had discriminated against a child on the basis of disability, and brought a slew of claims, including claims under the ADA, the Rehabilitation Act, the IDEA, the Equal Protection Clause, and Section 1983.  *Id.* at 141.  The district court had dismissed plaintiffs' claims under the ADA,

the Rehabilitation Act, and the IDEA, but the Second Circuit reversed and reinstated these claims. *Id.* at 152. The Circuit also reinstated plaintiff's § 1983 claim, and in doing so noted both that plaintiffs had stated causes of action under these federal statutes and that plaintiffs had cognizable constitutional claims remaining. *Id.* at 151–52. As other courts in this circuit have recognized, the Second Circuit in *Weixel* "did not reach the issue whether defendants could be sued in their individual capacities," and indeed not even *discuss* this issue. *Fox v. Poole*, No. 06-cv-148, 2008 WL 1867939, at *9 (W.D.N.Y. Apr. 24, 2008). *Weixel* therefore is inapt. Similarly, the Supreme Court's decision in *Fitzgerald v. Barnstable School Committee* is distinguishable, as the statute the Court considered there was not nearly as comprehensive as the Rehabilitation Act. 555 U.S. 256, 255–60 (2009). Plaintiff thus provides no reason to depart from the reasoned position of seven courts of appeals and a majority of courts in this circuit.

In sum, the Rehabilitation Act creates a detailed remedial scheme, and the Court will not use § 1983 to usurp Congress's careful line drawing in this area. *Accord Tri-Corp Housing Incorp.*, 826 F.3d at 448–49; *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 300 (3d Cir. 2017) ("while a plaintiff may use § 1983 as a vehicle for vindicating rights independently conferred by the Constitution, Title VII and ADA statutory rights cannot be vindicated through § 1983" (internal quotation marks omitted)). The Court concludes that Plaintiff cannot use § 1983 to obtain what the Rehabilitation Act does not provide—individual liability—and thus dismisses Plaintiff's claims against the Individual Defendants.

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' partial motion to dismiss, and dismisses Plaintiff's claims against Michael LaFrancis, Eva Moskowitz, and the ten Trustees. This resolves Dkt. No. 57.

SO ORDERED.

Dated: November 1, 2020
        New York, New York

_____
ALISON J. NATHAN
United States District Judge